FILED
CLERK, U.S. DISTRICT COURT
DEC 2 8 2011
CENTRAL DISTRICT OF CALIFORNIA
BY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIDGET GORDON,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>DELOITTE & TOUCHE, LLP GROUP LONG TERM DISABILITY PLAN,<br><br>　　　　Defendant. | CASE NO.: 11-CV-00913-R(JCGx)<br><br>[~~AMENDED PROPOSED~~] STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW<br><br>DATE:　October 28, 2011<br>TIME:　1:30 p.m.<br>CTRM:　8<br><br>Complaint Filed: January 31, 2011 |

BARGER & WOLEN LLP
19800 MACARTHUR BLVD.
EIGHTH FLOOR
IRVINE, CA 92612
(949) 757-2800

w:\documents and settings\jcc\desktop\draft stmt of facts and law_revised.doc

After consideration of the papers in support of and in opposition to Defendant Deloitte & Touche, LLP Group Long Term Disability Plan's ("Defendant" or "Plan") motion for summary judgment, and the oral argument of counsel, the Court determines that the following facts have been established as uncontroverted in this case:

## 1. **STATEMENT OF FACTS**

1. Any finding under this category that is a conclusion of law is also hereby adopted as a conclusion of law.

2. As part of its employee benefit package, Deloitte & Touche USA LLP ("Deloitte") offers a variety of benefit plans to its employees. MetLife issued to Deloitte Group Policy No. 33458-G-LTD to fund LTD benefits payable under the Plan. MetLife is the Plan's claims administrator and was granted broad discretionary authority to make all determinations as to eligibility for, and entitlement to, benefits, as well as the authority to interpret the terms of the Plan.

3. Under the Plan, Plaintiff Bridget Gordon ("Plaintiff") would be entitled to LTD benefits if she was otherwise eligible and met the following definition of disability:

> **Disability** or **Disabled** means that due to an Injury or Sickness, you require the regular care and attendance of a Doctor and
>
> 1. you are unable to perform each of the material duties of your regular job: and

BARGER & WOLEN LLP
19800 MACARTHUR BLVD.
EIGHTH FLOOR
IRVINE, CA 92612
(949) 757-2800

2. after the first 24 months of benefit payments, you must also be unable to perform each of the material duties of any gainful work or service for which you are reasonably qualified taking into consideration your training, education, experience and past earnings; or

3. you, while unable to perform all of the material duties of your regular job on a full-time basis, are:

    a. performing at least one of the material duties of your regular job or any other gainful work or service on a part-time or full-time basis; and

    b. earning currently at least 20% less per month than your Indexed Basic Monthly Earnings due to that same Injury or Sickness.

(AR 1677-78)[1]

4. Additionally, for certain types of disabilities, the Plan sets the maximum duration of benefit payments, as follows:

While you are Disabled due to a Mental Illness and not confined in a hospital or institution, the Monthly Benefit will be payable up to the lesser of:

---

[1] References to "AR" mean and refer to the Administrative Record, a true, correct and bates-stamped copy of which is attached to the previously filed Declaration of Matthew Hallford. For convenience, the initial letters and intervening zeros have been deleted. Thus, the document bearing the bates stamp "MET-GOR 001677" will be referred to simply as "AR 1677."

    1. 24 months; or

    2. The Maximum Benefit Duration shown in the Schedule of Benefits.

("Mental Illness Limitation") (AR 1681)

   5. Finally, as pertinent to this motion, the Plan provides that "[n]o lawsuit may be started more than 3 years after the time proof must be given."[2] (AR 1682)

   6. Plaintiff worked for Deloitte as a Manager of Enterprise Risk Services until October 2000. Around that time (at the age of 35), Plaintiff learned that she was HIV positive and claimed that she could no longer work due to "Major Depressive Disorder." (AR 1646)

   7. Based on the submissions by Plaintiff in support of her claim, and the medical records submitted by her treating physicians, MetLife determined that Plaintiff was eligible for benefits and began paying benefits effective March 3, 2001 (following expiration of the Plan's 90-day elimination period). At no point did Plaintiff or any of Plaintiff's doctors indicate that she was disabled as the result of any symptomology related to HIV. Indeed, there was almost no evidence submitted documenting Plaintiff's physical HIV symptoms. Over the next 18 months, and while paying Plaintiff LTD benefits, MetLife continued to review current submitted medical documentation from Plaintiff's physicians. (AR 5-26)

   8. In December 2002, MetLife made repeated attempts to contact Plaintiff to discuss her ongoing disability status and to arrange for a telephonic interview.

---

[2] The Plan provides that "written proof of a claim must be given to [MetLife] not later than 90 days following the end of the Elimination Period."

BARGER & WOLEN LLP
19800 MACARTHUR BLVD.
EIGHTH FLOOR
IRVINE, CA 92612
(949) 757-2800

(AR 26-27) Despite several attempts, MetLife representatives were unable to reach Plaintiff. (*Id.*) MetLife also spoke to Dr. Ardamis [James: Is this spelling of the first name correct?] Moe, Plaintiff's primary medical doctor (as opposed to Plaintiff's psychiatric treatment provider), who informed MetLife that Plaintiff had missed recent appointments and he was unaware of why she had not yet returned to work. (AR 27) Based on not receiving return phone calls from Plaintiff and the comments by Dr. Moe, MetLife terminated benefits effective January 2, 2003. (AR 1516-1517)

9. On January 9, 2003, Plaintiff appealed the termination decision and indicated that she planned to submit additional medical information in support of her claim. (AR 1530) On January 16, 2003, MetLife responded in a letter to Plaintiff indicating that it had received her appeal letter and informed her that any additional medical information to be considered on appeal must be submitted within 180 days from the date of termination. (AR 1529)

10. After reviewing all of the medical information submitted in support of her continuing claim for LTD benefits, MetLife explained in its March 17, 2003 letter that it had determined that Plaintiff had not met the definition of disability under the Plan. (AR 1512-1514) After setting forth the definition of disability, MetLife provided an in-depth summary of the medical information submitted by her physicians.

11. MetLife concluded the letter by indicating that "your Long Term Disability benefit is being terminated as the documentation provided does not substantiate that due to your psychiatric condition you are unable to perform the essential duties of your sedentary job." (AR 1514) Because this was the first denial on the merits of Plaintiff's continuing claim, MetLife also noted that she was able to appeal the determination within 180 days of the letter. (*Id.*)

12. In her letter of October 15, 2003, Plaintiff again appealed MetLife's termination decision. (AR 1485-1492) In that letter, Plaintiff set forth her belief that she continued to be disabled due to her severe and debilitating major depression. (AR 1486)

13. After extensive review of the medical information and the review by an independent physician consultant ("IPC"), in its November 4, 2003 letter, MetLife informed Plaintiff that benefits had been approved for the period of January 1, 2003 through March 2, 2003. (AR 1401-1402) The letter also informed Plaintiff that the Plan states:

> While you are disabled due to a Mental Illness and not confined in a hospital or institution, the monthly benefit will be payable to the lesser of:
>
> 1. 24 months; or
>
> 2. The Maximum Benefit Duration.

(AR 1401)

14. The letter further explained that Plaintiff had begun receiving LTD benefits on March 3, 2001, such that as of March 2, 2003, she had received 24 months of benefits. Based on the Mental Illness Limitation, MetLife explained that no additional benefits were available beyond March 2, 2003. (*Id.*) Because MetLife determined that Plaintiff was not entitled to benefits under the Plan beyond March 2, 2003, MetLife advised Plaintiff of her right to appeal.

15. Plaintiff took no substantive action for more than four years. On November 26, 2007, Plaintiff telephoned MetLife and asked whether she could have her claim re-opened. The MetLife representative explained to her that her claim was closed on March 2, 2003 and that her appeal deadline was 180 days from the November 2, 2003 letter. (AR 54-55) Plaintiff took no further action until 2009.

16. MetLife received a copy of a complaint dated April 12, 2009 that Plaintiff submitted to the California Department of Insurance ("DOI"). (AR 1377-1383) In a May 5, 2009 letter, MetLife informed Plaintiff that it would reopen her claim for further review. (AR 1369) MetLife allowed Plaintiff to submit any additional information that she would like to be considered, but requested that the submission be completed by September 1, 2009. During this period, Plaintiff submitted medical records from her treating physicians. MetLife conducted an extensive review of Plaintiff's medical records and asked two IPCs to review the medical information.

17. After completing its review, in its letter dated December 8, 2009, MetLife informed Plaintiff that it had determined that the original decision to withdraw benefits effective March 3, 2003 must be upheld. (AR 1060-1063) The letter again set forth the definition of disability and the Mental Illness Limitation. (AR 1060-1061) MetLife also explained that it had paid Plaintiff benefits from March 3, 2001 through March 2, 2003 in accordance with the Mental Illness Limitation. (AR 1061) Next, MetLife went through a detailed analysis and summary of the additional medical information that it had received in support of her claim since the reconsideration of the claim. (AR 1061-1062) MetLife also explained the findings of the two IPCs. (AR 1062) MetLife then concluded by informing Plaintiff:

> In summary, MetLife acknowledges that you have a history of a depressive disorder. In accordance with the Deloitte and Touche USA LLP LTD Plan, your benefits were approved under the Mental Illness limitation which allows for a lifetime maximum of twenty-four months. The new information submitted for a courtesy appeal review, which included a neuropsychological evaluation report, and medical records regarding your diagnosis of HIV, did not alter the previous decision to withdraw LTD benefits in accordance with the Plan's Mental Illness Benefit Limitation.

(AR 1062-1063) The letter also advised Plaintiff that it would consider another appeal, if requested.

18. MetLife subsequently received a letter dated April 14, 2010 from Plaintiff's counsel indicating that Plaintiff would appeal the adverse determination and submit additional information in support of her claim. (AR 1046-1048) Later, MetLife received a 73-page appeal letter (dated May 21, 2010) from Plaintiff's counsel (AR 385-462), plus more than 480 pages of exhibits (AR 463-947).

19. On July 6, 2010, MetLife wrote to Plaintiff's counsel informing him that it was continuing to review his client's claim for LTD benefits and that it was having two IPCs review her entire file. (AR 378) MetLife received comprehensive reports from the IPCs and sent them to Plaintiff's physicians for their review and comment. However, before MetLife could issue its claim determination, Plaintiff filed the Complaint in this action on January 31, 2011.

## 2. **CONCLUSIONS OF LAW**

1. Any conclusion under this category that is a finding of fact is also hereby adopted as a finding of fact.

**A. Because ERISA Does Not Provide Its Own Statute Of Limitations, The Court Applies California's Four Year Statute Of Limitations For Contract Actions.**

2. Because ERISA § 502(a)(1) does not provide its own statute of limitations, courts look to the most analogous statute of limitations under state law. *Wetzel* v. *Lou Ehlers Cadillac Group Long Term Disability Ins. Program,* 222 F.3d 643, 646 (9th Cir. 2000). The most analogous statute of limitations under California law is the four-year statute governing actions based on written contracts. *Code of Civil Procedure* § 337; *Wetzel, supra,* 222 F.3d at 647. In this litigation, Plaintiff has not disputed that the applicable statute of limitations is four years.

**B. The Plan's Shorter Three Year Limitations Provision Is Reasonable And Enforceable.**

3. Moreover, a provision in a contract may limit the time for bringing an action on the contract to a period less than that prescribed in the general statute of limitations, as long as the shorter period is reasonable. *Order of United Commercial Travelers* v. *Wolfe,* 331 U.S. 586, 608 (1947); 44 Am. Jur. 2d Insurance §1879 (1982) (Rule that contractual limitations periods shorter than statute of limitations is permissible provided they are reasonable is applicable to ERISA plans). In this regard, courts in the Ninth Circuit have joined other circuits in specifically recognizing the enforceability of a reasonable limitations period set forth in an

ERISA plan. *See Sousa v. Unilab Corp. Class II Members Group Benefit Plan*, 252 F. Supp. 2d 1046, 1055-1056 (E.D. Cal. 2002) ("[t]his court agrees with those courts that have allowed contractual limitations periods shorter than those provided by state law in ERISA actions. The Ninth Circuit has implied that it would allow a shorter statute of limitations for an ERISA claim.") (citing *Wetzel, supra*).

4. Federal courts outside the Ninth Circuit have also recognized the enforceability of reasonable limitations periods in ERISA plans that are shorter than statutes of limitations. *See, e.g., Northlake Regional Medical Center v. Waffle House System Employee Benefit Plan*, 160 F.3d 1301 (11th Cir. 1998) (held that a 90-day contractual limitations period in an ERISA plan was reasonable and enforceable); *Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869, 875 (7th Cir. 1997) (held that a 39-month contractual limitations period in an ERISA plan was reasonable and enforceable); *Chilcote v. Blue Cross & Blue Shield United of Wisconsin*, 841 F. Supp. 877 (E.D. Wisc. 1993) (recognizing the enforceability of a three-year limitations period contained in an ERISA plan, where state statute provided a six-year statute of limitations for breach of contract); *Alcorn v. Raytheon Co.*, 175 F. Supp. 2d 117 (D. Mass. 2001) (three-year contractual limitations period enforceable); *Allen v. Unionmutual Stock Life Ins. Co.*, 989 F. Supp. 961 (S.D. Ohio 1997) (three-year contractual limitations period enforceable); *Bomis v. Metropolitan Life Ins. Co.*, 970 F. Supp. 584 (E.D. Mich. 1997) (three-year contractual limitations period enforceable).

5. Accordingly, the three year limitations period set forth in the Plan at issue here is reasonable and, thus, enforceable. *Doe, supra*, 112 F.3d at 875, is instructive. In *Doe*, the Seventh Circuit held that a 39-month contractual limitations period in an ERISA plan was "no doubt" reasonable because:

> A suit under ERISA, following as it does upon the completion of an ERISA-required internal appeals process, is the equivalent of a suit to set aside an administrative decision, and ordinarily no more than 30 or 60 days is allowed within which to file such a suit. *See., e.g.,* 33 U.S.C. §921(a); 42 U.S.C. §7607(b)(1). Like a suit to challenge an administrative decision, a suit under ERISA is a review proceeding, not an evidentiary proceeding. It is like an appeal, which in the federal courts must be filed within 10, 30, or 60 days of the judgment appealed from, Fed. R. App. P. 4, depending on the nature of the litigation, rather than like a conventional lawsuit.

6. The Plan's three-year contractual limitations period is valid and enforceable. In this litigation, Plaintiff has not disputed the reasonableness of the three-year contractual limitations period.

**C. Plaintiff's Cause of Action Accrued, And The Applicable Limitations Periods Began To Run, When Plaintiff Knew Or Should Have Known That Her Claim For Benefits Under The Plan Was Denied.**

7. Federal law governs the accrual of a cause of action under ERISA. *Id.* at 649. That is, an action to recover plan benefits under ERISA § 502(a) accrues either when a claim for benefits has been formally denied or when the participant has reason to know the claim has been denied. *Id.*; *see also, Rodriguez v. MEBA Pension Trust,* 872 F.2d 69, 72 (4th Cir. 1989).

8. In its November 4, 2003 letter, MetLife informed Plaintiff that she was not entitled to additional LTD benefits beyond March 2, 2003 because she had

already received 24 months of benefits and that is all that was afforded under the terms of the Plan. MetLife also advised Plaintiff of her right to appeal. The November 4, 2003 letter explained that there were no additional benefits available, which constituted a clear and continuing repudiation of Plaintiff's claims. As of that date, Plaintiff's claim was terminated beyond March 2, 2003, and she never received any subsequent benefit payments from MetLife. Thus, she knew or should have known that her claim was denied. As such, the Plan's contractual limitations provision and the statute of limitations began running as of the date of the letter, November 4, 2003. *See Chuck v. Hewlett Packard Co.*, 455 F.3d 1026, 1032-1033 (9th Cir.) Accordingly, Plan's three-year contractual limitations provision expired on November 4, 2006, and California's four-year statute of limitations, *California Code of Civil Procedure* § 337, expired on November 4, 2007.

      9. Plaintiff filed the instant action on January 31, 2011 – more than three years after the statute of limitations ran and more than four years after the Plan's contractual limitations provision ran. Accordingly, the lawsuit is time barred under both the four-year statute of limitations and the three-year contractual limitations provision.[3]

**D. MetLife's Decision To Reconsider Plaintiff's Claim For Benefits Under The Plan Years After The Limitations Periods Ran Should Not Reset The Time Plaintiff Had To Commence Litigation.**

---

[3] While the Court need not apply the Plan's contractual limitations provision in confirming that Plaintiff's claims for relief are time-barred because she failed to file her action within the longer, four year statute of limitations period, it serves as a secondary basis for reaching the same ultimate conclusion. In order to be in compliance with the contractual limitations period, Plaintiff would have needed to initiate her action no later than November 4, 2006. Because she did not do so, Defendant is entitled to summary judgment as a matter of law.

10. In opposition to Defendant's motion, Plaintiff argued that MetLife's voluntary reconsideration of her LTD claim reset the contractual limitations and statute of limitation periods. However, Plaintiff's argument is misplaced because the pertinent authorities hold that once a limitations period passes, which it had here years before Plaintiff complained to the DOI, a cause of action cannot be resurrected by a claim administrator's later re-review.

11. In *Martin v. Constr. Laborer's Pension Trust,* 947 F.2d 1381 (9th Cir. 1991), plaintiff sought benefits from an employee pension plan under sections of the Labor Management Relations Act (amended in 1974 to comply with ERISA) ("LMRA"). The court held that the pension plan's denial of plaintiff's claim constituted a clear repudiation of plaintiff's claim, which commenced the statute of limitations. As such, the court held when the plaintiff failed to file his action within four years, the action was time-barred. *Id.* Thus, the district court dismissed the action. On appeal, plaintiff argued that there was no clear repudiation of his pension claim, *i.e.*, the statute of limitations never commenced, because the pension plan reopened his case five years after the initial denial. *Id.* The Ninth Circuit disagreed and held that the action was time barred, as the reconsideration did nothing to reopen the statutory period.

12. Similarly, in *Falk v. Federal Insurance Administration*, 1981 U.S. Dist. LEXIS 10168 (N.D. Cal. 1981), plaintiffs sued the Federal Insurance Administration to recover benefits under the National Flood Insurance Act, which provided a one-year statute of limitations. *Id.* at 1. The insurance company issued an initial denial of plaintiff's claim on October 31, 1978. *Id.* at 2. Plaintiffs took no action until December 12, 1979, when they sought reconsideration of the disallowance. *Id.* The company agreed to reconsider the claim and in a letter dated February 29, 1980, restated its original denial on essentially the same grounds. *Id.* at 2-3. Plaintiffs

argued that the suit was timely when measured against the mailing of the decision on reconsideration. In disagreeing with plaintiffs, the court reasoned as follows, including a discussion of the broader public policy:

> The company's reconsideration and subsequent denial of the plaintiffs' claim does not supersede the original denial for purposes of the running of the statute of limitations. It is very clear from the second denial letter that the company was merely restating its original position and denied the claim on the same ground, notwithstanding the change in policies. It would be anomalous to recommence an already expired limitations period any time a party sought reconsideration on an issue already passed upon by the insurance company.
>
> Moreover, since the statute of limitations had already run before reconsideration was even sought, the court lacks the power to hear this action. Plaintiffs had one year from October 31, 1978 to bring an action before this court. Their failure to do so extinguished their statutory right to bring an action in this court. The company's decision to reconsider its original decision cannot be considered a waiver of this limitations bar, particularly in light of the fact that its letter restating its original position expressly denied any such waiver of rights.
>
> To hold otherwise in this action would contravene a strong public policy to encourage an insurance company to reconsider its original denial when confronted with potentially new facts. ***If insurance companies were saddled with the situation that***

> *whenever it reconsidered an earlier decision it would inaugurate a new limitations period, companies would be reluctant to offer policy holders the luxury of a second evaluation.* This is particularly true in the present case where the company could easily have said that the time period had run before the claimants' request and any grounds for reconsideration, no matter how meritorious, would be legally insufficient.

Id. at 3-5 (emphasis added); see also Dameron v. Sinai Hospital of Baltimore, supra, 595 F. Supp. at 1414 (9th Cir. 1991) ("a tenacious plaintiff should not be allowed to renew stale claims merely by requesting reconsideration of 'final' decisions.").

Such logic has been squarely applied in other circuits in the ERISA disability context. For example, in *Stafford v. Eli Dupont De Nemours,* 2002 U.S. App. LEXIS 1039 (3d Cir. Jan. 24 2002), the Third Circuit rejected plaintiff's argument that because the disability plan's procedures allowed employees to have the claims fiduciary reconsider their claims, plaintiff's administrative remedies were never exhausted and the statute of limitations had not ever began to run. In *Stafford*, the court stated:

> If this Court adopted [plaintiff]'s theory, there would never be repose for an employer that procedurally allows for the reopening of a case. A decade-old finding of non-disability could then be judicially challenged simply by a plaintiff seeking to reopen the administrative process. Allowing this would in turn create incentives for an employer not to allow any reopening of the administrative process, lest it face a perpetual risk of litigation.

Id. at *6-7 (citing *Martin*, 947 F.2d at 1386-87).

BARGER & WOLEN LLP
19800 MACARTHUR BLVD.
EIGHTH FLOOR
IRVINE, CA 92612
(949) 757-2800

13. Therefore, these authorities buttress the Plan's position that Plaintiff's action is barred by the applicable statute and contractual limitations periods, because she was required to file her lawsuit by November 4, 2007 at the very latest. Significantly, both the statute of limitations and the contractual limitations periods had expired long before Plaintiff ever sought reconsideration.

14. MetLife's later voluntary reconsideration and subsequent decision to uphold the prior determination (on the same basis that Plaintiff had received all benefits to which she was entitled pursuant to the Plan's Mental Illness Limitation) did not reset the already-passed statute and contractual limitations periods, for the reasons cited above. If the law were otherwise, MetLife and other insurers would be discouraged from voluntarily and benevolently reconsidering an otherwise time barred claim. See Martin, 947 F.2d at 1386-87. See also Stafford, 2002 U.S. App. LEXIS 1039, at *6-7. Indeed, there would be absolutely no reason for a plan's claims fiduciary to ever reconsider a claim that is time barred as MetLife did here. Accordingly, Plaintiff's claim is time barred and cannot be revived by MetLife's reconsideration thereof.

15. Plaintiff's arguments that Defendant has waived its right to assert either of the defenses of statute of limitations or contractual limitations are without merit. The reconsideration of Plaintiff's claim does not revive already passed statutes and contractual limitation periods. See Falk v. Federal Insurance Administration, 1981 U.S. Dist. LEXIS 10168 (N.D. Cal. 1981); Martin v. Constr. Laborer's Pension Trust, 947 F.2d 1381 (9th Cir. 1991); Stafford v. Eli Dupont De Nemours, 27 Fed. Appx. 137 (3d Cir. 2002); Dameron v. Sinai Hospital of Baltimore, 595 F. Supp. 1404 (D. Md. 1991) ("a tenacious plaintiff should not be allowed to renew stale claims merely by requesting reconsideration of 'final' decisions."). Defendant did not agree to be sued when MetLife once again determined that the Plaintiff's claims

were baseless for the same reasons already explained to Plaintiff on numerous occasions previously. Therefore, Defendant did not waive the defenses of statute of limitations or contractual limitations.

16. Plaintiff's arguments that Defendant should be estopped from asserting either of the defenses of statute of limitations or contractual limitations is without merit. "As a general rule, a defendant will be estopped from setting up a statute-of-limitations defense when its own prior representations or conduct have caused the plaintiff to run afoul of the statute and it is equitable to hold the defendant responsible for that result." *Lamantia v. Voluntary Plan Adm'rs, Inc.*, 401 F.3d 1114, 1119 (9th Cir. 2005); *see also Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869, 875 (7th Cir. 1997) (stating that "if the defendant through representations or otherwise prevents the plaintiff from suing within the limitations period, the plaintiff may add to the remaining limitations period the entire period during which the defendant's action was effective in delaying the suit"). Here, there is absolutely no evidence indicating that MetLife did anything to cause Plaintiff to not file her Complaint within the proscribed time periods.

16. Defendant has established that no genuine issue of material fact exists with respect to Gordon's claims for relief, and – because her lawsuit is time barred by both the statute and the contractual limitations periods – Defendant is therefore entitled to judgment as a matter of law.

17. Judgment shall be entered in Defendant's favor consistent herewith.

DATED: December 28, 2011

_____
THE HONORABLE MANUEL REAL
UNITED STATES DISTRICT JUDGE

Submitted By:

BARGER & WOLEN LLP

*/s/ James C. Castle*
ROBERT K. RENNER
JAMES C. CASTLE
Attorneys for Defendant
Deloitte & Touche, LLP Group Long Term Disability Plan